## Seeders v. International Brotherhood of Teamsters, etc.

*Desmond J. McTighe,* of *Fox & McTighe,* for plaintiff.

*Thomas E. Waters,* for defendants.

KNIGHT, P. J., October 30, 1945.—This is a rule granted upon defendants, under our practice, to show cause why a preliminary injunction should not be entered, directed to defendants, to restrain them from interfering with the necessary and customary supply of beer and other beverages, from the Adam Scheidt Brewing Company; from threatening or otherwise attempting to coerce plaintiff, or his employes, to commit a breach of the present labor contract.

Defendants in reply filed two pleadings: First, a petition challenging the jurisdiction of the court; second, an answer on the merits, denying the legal right of plaintiff to an injunction.

The action arises out of a jurisdictional dispute between two labor unions. While it is not our purpose to make formal findings of fact at this time, some recital of the relevant facts as gathered from the undenied averments of the pleadings and the evidence is necessary to understand the questions before us.

Plaintiff is a beer distributor in the Borough of Pottstown, and is the sole representative in that borough for handling the products of the Adam Scheidt Brewing Company of Norristown; he has been handling the products of the Adam Scheidt Brewing Company since 1932.

Plaintiff has six employes, all of whom are members of the Brewers Union, a labor organization which has been certified by the National Labor Relations Board as the exclusive bargaining agent for the Pottstown area.

Plaintiff has and has had for the last six years, a contract with the Brewers Union, by the terms of which plaintiff is required to maintain a closed shop. In September of this year, no dispute existed between plaintiff and the Brewers Union or with any of his employes, members of the union. Plaintiff's contract with the Brewers Union expires May 31, 1946.

About the middle of September last, individual defendants came to Pottstown, and saw one George Miller, a member of the Brewers Union and the acting shop steward for the union in the Pottstown area. Individual defendants told Miller that they wanted to get the drivers in Pottstown into the Teamsters' Union; that there should be a meeting of all the drivers in the Pottstown area, all of whom belonged to the Brewers Union, and the proposition submitted to them. The witness said he would call such a meeting. It was held,

and the men decided that they were satisfied with their present union affiliations, and did not care to join the Teamsters' Union. Mr. Miller communicated the result of the meeting to individual defendant Basal.

The witness Miller testified that when individual defendants saw him in Pottstown, they told him that "If you men do not come in the easy way, we will take you in the hard way"; and when asked what was meant by the hard way, a strike, they said "We have another method of doing that. That is to shut off your beer from the source of supply". Plaintiff received his deliveries of beer and soft drinks, some by trucks of a common carrier, and some by his own vehicles. The supplies were taken from the loading platform of the brewery.

Mr. Theodore Hovell has charge of the labor relations as they apply to drivers of the Adam Scheidt Brewing Company. He testified that on September 20th defendant Maguire called him on the telephone and told him that as plaintiff "wasn't joined up with the Teamsters' Union, he was not to get any more beer from us until it was settled". That after receiving the above message, he called the shipping office, and stopped plaintiff's supply, and notified plaintiff to that effect. No beer has been supplied by the brewery to plaintiff since that time. The drivers of the Adam Scheidt Brewing Company and of Tose, the common carrier who delivered some of the beer to plaintiff, are members of the Teamsters' Union. Plaintiff had no contract with the brewery for the sale of beer to him, although he had been handling the products of the brewery for 15 years, and his account with the brewery was satisfactory.

There is no evidence of violence, threats of violence or picketing in the case.

The first question before us is that of jurisdiction.

All of the defendants reside in the City of Philadelphia, and the office of defendant union is in that city. The relief sought is a personal decree, and this court is

without jurisdiction unless the Act of April 6, 1859, P. L. 387, has been modified and suspended by Pa. R. C. P. 2156, applying to unincorporated associations. Paragraph "*a*" of rule 2156 provides as follows:

"(*a*) Except as otherwise provided by subdivision (*b*) of this rule, an action against an association may be brought in and only in a county where the association regularly conducts business or any association activity, or in the county where the cause of action owe or in a county where a transaction or occurrence took place out of which the cause of action arose."

We are of the opinion that the cause of action arose in Montgomery County, and that the transaction or occurrence out of which the cause of action arose, also took place in this county. This court then has jurisdiction of principal defendant, the Teamsters' Union, and having jurisdiction of principal defendant, it also has jurisdiction over the individual defendants under that portion of the Act of 1859, supra, not modified by rule 2156, supra.

Defendants in their reply brief made some point that the bill and rule were not served by the Sheriff of Philadelphia County as required by the Pa. R. C. P. 2157 (*c*) pertaining to unincorporated associations.

We do not think this affects the jurisdiction of the court. The service could have been stricken off upon motion, but defendants elected to appear and defend on the merits.

Having determined that this court has jurisdiction, we turn to the question of whether plaintiff is entitled to equitable relief at this time. In approaching this question, several things seem obvious.

Plaintiff, a small business man, is an *innocent* party caught between the conflicting demands of two powerful labor unions. The Adam Scheidt Brewing Company is not a party to the proceeding, and even if it were, we could not order it to supply beer to the plaintiff, for it is under no legal duty to supply it. Even

if plaintiff had a contract with the brewery, his remedy would be an action for damages and not a bill for a mandatory injunction. Plaintiff cannot sign a contract with the Teamsters' Union without violating his present contract with the Brewers' Union.

Under existing conditions the refusal of the brewery to supply beer and soft drinks to plaintiff is seriously injuring his business.

The present contest does not come within the swathe of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, because it is apparent that the actions of defendants are intended to compel or require plaintiff or his employes to prefer or become members of the Teamsters' Union, and is calculated to cause or coerce plaintiff to commit a violation of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, or the National Labor Relations Act of July 5, 1935, 49 Stat. at L. 449. The case then falls within the exceptions to the Labor Anti-Injunction Act of 1937, supra, as defined by the amendment to the act passed by the Act of June 9, 1939, P. L. 302.

Reduced to its simplest terms, this is the situation: The Teamsters' Union want the employes of plaintiff to become members of the teamsters; the employes, members of the Brewers' Union, refuse; the Teamsters' Union then request or demand that the Adam Scheidt Brewing Company refuse to sell to or supply plaintiff with any of its products, and the brewing company complies with the request or demand.

The brewery could have terminated its business relations with plaintiff at any time, with or without any reason, and there would have been nothing unlawful in such action. Can we then say that because the brewery complied with the request or demand of the Teamsters' Union, its action or the demand that motivated it became unlawful?

There is no evidence of any threat made by defendants against the brewery, and, as we see it, if the

actions of defendants are not unlawful, the motive for the actions becomes unimportant. Defendants have not sought to inflict a general boycott upon plaintiff nor have they picketed plaintiff's premises nor threatened violence to him or his employes.

We have received briefs and reply briefs from counsel on both sides, and we have examined the authorities cited in these briefs, as well as a number disclosed by our own research, but we have found no case in which the facts were the same or nearly identical with the facts before us. The nearest case we have been able to find is that of Dominic Maurer, Inc., v. Berks Products Corp. et al., 52 D. & C. 470 (1944), a case in which conspiracy was alleged, and which presented a stronger argument in favor of a preliminary injunction than is to be found in the present controversy. In that case Judge Shanaman of Berks County, in a well-considered opinion, refused a preliminary injunction.

The legislature has declared that the public policy of Pennsylvania is opposed to preliminary injunctions in labor cases: section 2 of the Labor Anti-Injunction Act, supra; and our appellate courts have held that a preliminary injunction is never granted except in clear cases where the right is unquestionable, and to prevent irreparable injury: Herr et al. v. Rumisek et al., 303 Pa. 9 (1931).

The law insofar as it relates to labor relations is far from well-settled in Pennsylvania, and we believe the right to a preliminary injunction in this case is very doubtful.

And now, October 30, 1945, the rule to show cause why the bill should not be dismissed for the reason that the court has no jurisdiction over the subject matter thereof, and over the defendants is discharged.

The rule to show cause why a preliminary injunction should not be issued is likewise discharged.